# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PENDLETON PLACE, LLC, | No. 58118-3-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| KALEINAINOA ASENTISTA; and all other unauthorized occupants of 5454 Kitsap Way #312, Bremerton, Washington 98312, | |
| Appellant. | |

MAXA, J. – Kaleinainoa Asentista appeals the trial court's order directing issuance of a writ of restitution granting Pendleton Place, LLC possession of Asentista's apartment unit after he allegedly materially breached the terms of his lease. Pendleton Place operates a federally subsidized housing facility that serves adults who are chronically homeless, where Asentista rented a unit.

Pendleton Place served Asentista with four 10-day notices to comply or vacate the premises after he allegedly walked into the lobby shirtless on one occasion and harassed and threatened fellow residents several times. More than 30 days after the last notice, Pendleton Place filed an unlawful detainer action in superior court. After two show cause hearings, the trial court issued an order directing the issuance of a writ of restitution.

Asentista argues that the trial court erred in entering the writ of restitution order because Pendleton Place failed to provide him with a 30-day notice to vacate as provided by a section of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. § 9058(c)(1). Pendleton Place claims that 15 U.S.C. § 9058(c)(1) notice provision applies only to evictions for nonpayment of rent, and requires only that the landlord wait 30 days after the notice required under state law before filing an eviction action.

We hold that the four 10-day notices to comply or vacate did not meet the 30-day notice requirement set forth in 15 U.S.C. § 9058(c)(1). Accordingly, we reverse the trial court's order directing issuance of a writ of restitution and remand for the trial court to vacate the writ of restitution order and dismiss the unlawful detainer action.[1]

FACTS

*Background*

Pendleton Place is a housing facility in Bremerton. It serves adults who are chronically homeless. Kitsap Mental Health (KMH) provides 24-hour staffing for the residents of Pendleton Place. Pendleton Place participates in the federal low-income housing tax credit program.

In June 2022, Asentista signed a lease for a unit at Pendleton Place.

*Pre-Eviction Notices*

On July 22, 2022, Pendleton Place served Asentista with three 10-day notices to comply or vacate. Each notice stated, "You are hereby notified under RCW 59.18.650(2)(b) that the

---

[1] Asentista also argues that (1) the pre-eviction notices Pendleton Place served him were unlawfully vague; and (2) Pendleton Place failed to prove just cause for an eviction under federal and state law or, in the alternative, the trial court erred in failing to order a trial to resolve outstanding issues of material fact regarding whether Pendleton Place had just cause to evict him. Because of our holding, we do not address these issues.

tenancy of the premises set forth above will be terminated as of August 5, 2022 (10 days) unless you remediate the following substantial breach of a material term subscribed to you in your rental agreement." Clerk's Papers (CP) at 29, 33, 37.

The first notice stated that on July 21 KMH staff witnessed Asentista screaming down the hallways and making intimidating gestures that made residents and staff feel threatened. The second notice stated that on July 21 Asentista breached his lease when he entered the common area while not wearing a shirt. The third notice said that on July 22 Asentista breached his lease when he threatened another resident and then followed the resident down the hallway.

On August 19, Pendleton Place served Asentista with a fourth 10-day notice to comply or vacate. The notice stated, "You are hereby notified under RCW 59.18.650(2)(b) that the tenancy of the premises set forth above will be terminated as of August 29, 2022 (10 days) unless you remediate the following substantial breach of a material term subscribed to you in your rental agreement." CP at 60.

The notice referenced three incidents. First, on August 13 KMH staff witnessed Asentista yelling threats toward a resident in their window. Second, on August 14 KMH staff and a security officer witnessed Asentista screaming from his room and making threats to other residents. Third, KMH staff and another security officer heard Asentista yelling threats from his unit with the door open.

*Unlawful Detainer Action*

On September 14, Pendleton Place filed an unlawful detainer action in superior court. The complaint attached the 10-day notices as well as several incident reports that involved Asentista. Pendleton Place then caused Asentista to be served with an eviction summons, the complaint, and an order to show cause.

Asentista moved to dismiss the unlawful detainer action. He argued that Pendleton Place failed to follow proper notification procedures in the lease regarding his alleged breaches of the terms of the lease. In the alternative, Asentista argued that the unlawful detainer action should be dismissed because Pendleton Place failed to comply with notice requirements of 15 U.S.C. § 9058(c)(1). Later, Asentista requested a trial to resolve open questions of material fact.

After two show cause hearings, the trial court denied Asentista's motion to dismiss and request for a trial. Regarding the 15 U.S.C. § 9058(c)(1) notice requirement, the court said that "the first notice was given on July 22 of 2022, more than thirty days have elapsed since that first notice. So, the purpose of the act has been satisfied." Rep. of Proc. (Oct. 21, 2022) at 22. The court then concluded that Pendleton Place demonstrated evidence of health and safety issues. The trial court issued an order granting the writ of restitution.

Asentista appeals the trial court's order granting the writ of restitution.

## ANALYSIS

A.      APPLICATION OF 15 U.S.C. § 9058(c)(1) 30-DAY NOTICE

Asentista argues that the trial court erred in granting the writ of restitution because Pendleton Place failed to comply with the 30-day notice requirement in 15 U.S.C. § 9058(c)(1). We agree.

1.      Relevant Eviction Notice Statutes

RCW 59.12.030(4) imposes several requirements on landlords before they may bring an unlawful detainer action against a tenant for breach of a condition or covenant in the lease. Landlords must provide written notice to the tenant identifying the breach and giving the tenant 10 days to comply or vacate the property. The notice must specify "the acts or omissions constituting the breach" and must specify the date by which the tenant must remedy or vacate the

property. RCW 59.18.650(2)(b). If the tenant fails to cure the breach or vacate the property, the tenant is unlawfully detaining the premises. RCW 59.18.650(2)(b).

Congress passed the CARES Act in 2020 in response to the COVID-19 pandemic, part of which includes protections for tenants in federally subsidized housing. *See* CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). 15 U.S.C. § 9058(a)(2) provides protection for tenants facing eviction who reside in dwellings in a "covered property." The term "covered property" is defined as any property that "participates in a covered housing program." 15 U.S.C. § 9058(a)(2)(A)(i). One of the covered housing programs is the low-income housing tax credit program in which Pendleton Place participates. 34 U.S.C. § 12491(a)(3)(J).

15 U.S.C. § 9058(b) is titled "Moratorium" and states:

During the 120-day period beginning on March 27, 2020, the lessor of a covered dwelling may not (1) make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant *for nonpayment of rent* or other fees or charges; or (2) charge fees, penalties, or other charges to the tenant related to such nonpayment of rent.

(Emphasis added.)

15 U.S.C. § 9058(c) is titled "Notice" and states:

The *lessor* of a covered dwelling unit (1) *may not require the tenant to vacate* the covered dwelling unit *before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate*; and (2) may not issue a notice to vacate under paragraph (1) until after the expiration of the period described in subsection (b).

(Emphasis added.)

Pendleton Place does not dispute that 15 U.S.C. § 9058 applies to its housing facility. Federal laws that provide additional protections for tenants beyond the requirements of state law "are properly considered as limitations to our state's unlawful detainer statute." *Indigo Real Estate Servs. v. Wadsworth*, 169 Wn. App. 412, 423, 280 P.3d 506 (2012).

A trial court cannot grant relief in an unlawful detainer action if the landlord has not provided the required notice to vacate or cure. *Kitsap County Consol. Hous. Auth. v. Henry-Levingston*, 196 Wn. App. 688, 699, 385 P.3d 188 (2016). "Such noncompliance prevents the trial court from exercising its jurisdiction." *Id.*

2.     Statutory Interpretation

We view questions of statutory interpretation de novo. *Ekelmann v. City of Poulsbo*, 22 Wn. App. 2d 798, 807, 513 P.3d 840 (2022). When interpreting a federal statute, our objective is to ascertain the intent of Congress. *Henry-Levingston*, 196 Wn. App. at 701. "We consider the language of the statute, the context of the statute, related statutes, and the statutory scheme as a whole." *Ekelmann*, 22 Wn. App. 2d at 807.

If the plain statutory language is unambiguous, we apply that language as written. *Dzaman v. Gowman*, 18 Wn. App. 2d 469, 479, 491 P.3d 1012 (2021). We cannot use statutory interpretation to add language that the legislature did not use. *Miller v. Dep't of Revenue*, 27 Wn. App. 2d 415, 423, 532 P.3d 187 (2023). And this court does not "rewrite plain statutory language under the guise of construction." *McColl v. Anderson*, 6 Wn. App. 2d 88, 91, 429 P.3d 1113 (2018).

3.     Plain Language of 15 U.S.C. § 9058(c)(1)

15 U.S.C. § 9058(c)(1) states that a lessor "may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate." The plain language of this statute requires a landlord to provide the tenant with a 30-day notice to vacate before requiring the tenant to vacate the premises. Division One of this court agreed: "Indeed, the plain language of the CARES Act mandates that a landlord that has received certain federal financial benefits must provide such a

6

[30-day] notice to tenants residing in housing units covered by the Act." *Sherwood Auburn, LLC v. Pinzon*, 24 Wn. App. 2d 664, 669, 521 P.3d 212 (2022), *review denied,* 1 Wn.3d 1005 (2023).

Pendleton Place disputes this interpretation, making two arguments. First, Pendleton Place claims that 15 U.S.C. § 9058(c)(1) is limited by the eviction moratorium provisions in subsection (b), and applies only to eviction for nonpayment of rent. But this argument is inconsistent with the language of 15 U.S.C. § 9058(c)(1). There is no language in 15 U.S.C. § 9058(c)(1) limiting its applicability to eviction related to nonpayment of rent. The eviction moratorium in 15 U.S.C. § 9058(b) contains such a limitation. 15 U.S.C. § 9058(c)(1) does not.

The Congressional Research Service (CRS)[2] issued a report addressing this question. MAGGIE MCCARTY & DAVID H. CARPENTER, CONG. RSCH. SERV., "CARES ACT EVICTION MORATORIUM," (April 7, 2020), https://crsreports.congress.gov/product/pdf/IN/IN11320#:~:text=Section%204024%20of%20the%20CARES,assistance%20or%20federally%20related%20financing [https://perma.cc/YRK4-4BE9]. The report states:

> In contrast to the eviction and late fee protections of Section [9058(b)], which are expressly limited to nonpayment, Section [9058(c)] does not expressly tie the notice to vacate requirement to a particular cause. Thus, Section [9058(c)] arguably prohibits landlords from being able to force a tenant to vacate a covered dwelling for nonpayment or *any other reason* until after August 24, 2020 (i.e., 120 days after enactment, plus 30 days after notice is provided).

*Id*. at 1. Although CRS reports are not binding on this court, they can provide valuable insight into the legislative intent behind federal laws. *See Hawaii v. Trump*, 878 F.3d 662, 688 n.15 (9th

---

[2] The CRS serves Congress by providing research and analysis to support its legislative duties. *History and Mission of the Congressional Research Service*, LIBR. OF CONG. (Sept. 16, 2021) https://www.loc.gov/crsinfo/about/history.html [https://perma.cc/KVQ3-GWSW].

Cir. 2017), *rev'd on other grounds*, 138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018) (relying on CRS report to interpret statute).

Pendleton Place's argument would require us to add the limiting language in 15 U.S.C. § 9058(b) to 15 U.S.C. § 9058(c)(1). We decline to add language that Congress did not include. *See Miller*, 27 Wn. App. 2d at 423. Instead, we conclude that the 30-day notice provision in 15 U.S.C. § 9058(c)(1) applies to all evictions of tenants living in covered dwelling units, not just those for nonpayment of rent.

Second, Pendleton Place argues that it complied with 15 U.S.C. § 9058(c)(1) because it did not commence eviction proceedings against Asentista until 30 days after serving the four 10-day notices. Again, this argument is inconsistent with the language of 15 U.S.C. § 9058(c)(1).

Division One addressed this issue in *Sherwood Auburn*, 24 Wn. App. 2d 664. In that case, the landlord served the tenants with a 14-day notice to pay or vacate the premises when they fell behind on their rent. *Id*. at 668.[3] Over 30 days after service of the notice, the landlord filed an unlawful detainer action. *Id*. at 669. After holding a show cause hearing, the trial court issued a writ of restitution. *Id*.

On appeal, the landlord argued that 15 U.S.C. § 9058(c)(1) "simply prohibits state trial courts from evicting tenants during the 30-day period following service of a pay or vacate notice required by state law." *Id*. at 672. In other words, the landlord claimed that it could serve notice and could file an unlawful detainer action earlier than 30 days, but 15 U.S.C. § 9058(c)(1)

---

[3] The landlord also served the tenants with a document titled "30-day Notice (CARES ACT)." *Sherwood Auburn*, 24 Wn. App. 2d at 668. That document stated, in relevant part, that "if a court so orders in any unlawful detainer action, you may be required to vacate the residential unit in not less than 30 days from the date of this notice." *Id*.

provided only the trial court could not order the tenant to vacate until 30 days after the notice. *Id.* at 673.

The court rejected this argument. *Id.* at 673-75. The court concluded that "[t]he plain language of the statute . . . belies such an interpretation. The CARES Act notice provision clearly prohibits the lessor . . . – not a state trial court – from requiring a tenant to vacate a covered housing unit prior to expiration of the notice period." *Id*. at 673. The court stated, "Here, Congress unambiguously provided that 'the lessor' may not require a tenant to vacate prior to providing a 30-day notice." *Id*.

The court reasoned that if 15 U.S.C. § 9058(c)(1) "simply prevented the eviction of tenants for 30 days following notice, without providing tenants the ability to cure the breach or vacate the premises during that period, the notice provision would be rendered meaningless." *Id*. at 674. The court emphasized that the purpose of the notice requirement not only was to notify the tenant of the alleged breach, but to provide a period of time during which the tenant could cure the alleged breach. *Id*. The court stated that under the landlord's interpretation, the 15 U.S.C. § 9058(c)(1) would provide no additional protection because the landlord could commence an unlawful detainer action if the breach was not cured within 14 days. *Id*. at 674-75.

Pendleton Place argues that the analysis in *Sherwood Auburn* should be limited to cases involving nonpayment of rent because the eviction in that case was for nonpayment. But as discussed above, 15 U.S.C. § 9058(c)(1) applies to situations beyond nonpayment of rent. And Division One did not limit its analysis to rent nonpayment cases.

Pendleton Place also makes a slightly different argument than the landlord made in *Sherwood Auburn*. Pendleton Place argues that it complied with 15 U.S.C. § 9058(c)(1) because it waited 30 days after the last 10-day notice before filing the unlawful detainer action. But

9

Pendleton Place's notices told Asentista that he was required to vacate the premises within 10 days if he did not cure the alleged breaches. 15 U.S.C. § 9058(c)(1) expressly states that the landlord "may not require the tenant to vacate the covered dwelling unit" until 30 days after notice.

We conclude that the plain language of 15 U.S.C. § 9058(c)(1) requires a landlord to provide the tenant with a 30-day notice to vacate before requiring the tenant to vacate the premises. The four 10-day pre-eviction notices that Pendleton Place gave to Asentista did not meet that 30-day notice requirement. Therefore, we hold that the trial court could not grant relief in Pendleton Place's unlawful detainer action, and the writ of restitution order must be vacated and the unlawful detainer action must be dismissed.

B.       ATTORNEY FEES ON APPEAL

Asentista requests attorney fees on appeal under the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW.

RAP 18.1(a) provides that a party may have a right to recover reasonable attorney fees on appeal if applicable law grants the prevailing party the right to do so. The RLTA authorizes an award of attorney fees to the prevailing party. RCW 59.18.290(2). Asentista is the prevailing party on appeal. He was represented through the King County Bar Association Housing Justice Project, but the prevailing party can recover attorney fees even if their attorneys provide representation at no cost. *Council House, Inc. v. Hawk*, 136 Wn. App. 153, 159, 147 P.3d 1305 (2006). Therefore, we award Asentista his reasonable attorney fees and costs.

10

CONCLUSION

We reverse the trial court's order directing issuance of a writ of restitution and remand

for the trial court to vacate the writ of restitution order and dismiss the unlawful detainer action.

_____
MAXA, J.


We concur:

_____
GLASGOW, C.J.


_____
CRUSER, J.